[Cite as *State v. Wiggins*, 2021-Ohio-4554.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## MAHONING COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

v.

SHENIKA WIGGINS,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 20 MA 0125**

---

Criminal Appeal from the
Youngstown Municipal Court of Mahoning County, Ohio
Case No. 19 CRB 01327 Y

**BEFORE:**
Gene Donofrio, Carol Ann Robb, David A. D'Apolito, Judges.

---

**JUDGMENT:**
Affirmed

---

*Atty. Kathleen Thompson*, City of Youngstown Prosecutor's Office, 9 W. Front Street, 3rd Floor, Youngstown, Ohio 44503, for Plaintiff-Appellee and

*Atty. Rhonda Santha*, 6401 State Route 534, West Farmington, Ohio 44491, for Defendant-Appellant.

Dated:
December 10, 2021

**Donofrio, J.**

{¶1}     Defendant-appellant, Shenika Wiggins, appeals from a Youngstown Municipal Court judgment convicting her of endangering children, following a bench trial.

{¶2}     On October 7, 2018, appellant took her three children, ages 16, 14, and 6, and her 10-year-old nephew to Mill Creek Park for a kayak trip.  When she arrived at the boat launch area, appellant learned that the children had to be 17 years old to participate in the trip.  She decided to say that the older two children were 17 and 18 years old so that they could go on the kayak trip.  Appellant decided to leave the two younger children in her vehicle while she went on the two-hour trip with the older children.  Appellant left her youngest child and her nephew in the vehicle with some snacks and her cell phone and went on the trip.

{¶3}     While the children were in the car, Kamila Ivory, appellant's sister and the mother of the 10-year-old, called appellant's phone.  Instead of reaching appellant, Ivory's son answered.   He told his mother that appellant had left him and his cousin alone in the car in a parking lot in Mill Creek Park.  He sent Ivory a picture of where he was.  Ivory drove to Mill Creek Park.  In the park, she located Officer Christian Hunter and explained the situation to him.  Officer Hunter was able to identify the location of the children from the picture Ivory showed him.  Ivory then followed Officer Hunter to the East Newport boat launch where they found the children scared and alone in the car.

{¶4}     Appellant and the rest of the kayak group still had not returned from the trip.  So Officer Hunter sent another officer out to look for them.  Upon appellant's return, she was placed under arrest.

{¶5}     Appellant was charged with endangering children, a first-degree misdemeanor in violation of R.C. 2919.22(A).  She entered a not guilty plea.

{¶6}     The matter proceeded to a bench trial where the court heard testimony from the responding officers, Ivory, and appellant.  At the conclusion of the trial, the court found it was undisputed that appellant left her child and nephew alone in a vehicle while she went on a kayak trip, the keys were inside of the vehicle, the vehicle was in close proximity to Newport Lake, appellant was gone for at least one hour, and the area is

known for criminal activity. Based on this evidence, the court found appellant guilty as charged and set the matter for sentencing.

**{¶7}** The trial court subsequently sentenced appellant to one year of reporting probation, a $100 fine, $100 in probation fees, and ordered her to take parenting classes.

**{¶8}** Appellant filed a timely notice of appeal on November 19, 2020. The trial court stayed her sentence pending this appeal. She now raises a single assignment of error for our review.

**{¶9}** Appellant's sole assignment of error states:

APPELLANT'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

**{¶10}** Appellant argues that her conviction for child endangering was against the manifest weight of the evidence. She asserts there were conflicts in the testimony. She also points to her own testimony, along with her sister's testimony, in an attempt to show that a woman was watching the children and they were in no danger.

**{¶11}** In determining whether a verdict is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences and determine whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). "Weight of the evidence concerns 'the inclination of the *greater amount of credible evidence*, offered in a trial, to support one side of the issue rather than the other.'" *Id*. (Emphasis sic.). In making its determination, a reviewing court is not required to view the evidence in a light most favorable to the prosecution but may consider and weigh all of the evidence produced at trial. *Id*. at 390.

**{¶12}** *Thompkins* addressed a manifest weight argument in the context of a jury trial. But the standard of review is equally applicable when reviewing a manifest weight challenge from a bench trial. *State v. Layne*, 7th Dist. Mahoning No. 97 CA 172, 2000 WL 246589, at *5 (Mar. 1, 2000). A reviewing court will not reverse a judgment as being against the manifest weight of the evidence in a bench trial where the trial court could reasonably conclude from substantial evidence that the state has proved the offense

Case No. 20 MA 0125

beyond a reasonable doubt. *State v. Hill*, 7th Dist. Mahoning No. 09-MA-202, 2011-Ohio-6217, ¶ 49, citing *State v. Eskridge*, 38 Ohio St.3d 56, 59, 526 N.E.2d 304 (1988).

{¶13}   Appellant was convicted of endangering children in violation of R.C. 2919.22(A), which provides in relevant part:

> No person, who is the parent, guardian, custodian, person having custody or control, or person in loco parentis of a child under eighteen years of age * * * shall create a substantial risk to the health or safety of the child, by violating a duty of care, protection, or support.

{¶14}   We must examine the evidence presented to determine whether the trial court could have reasonably concluded from substantial evidence that the state proved these elements beyond a reasonable doubt.

{¶15}   Mill Creek Police Officer Christian Hunter was the first witness to testify. Officer Hunter was working in Mill Creek Park when Kamila Ivory approached him. (Tr. 14). Ivory was concerned about her son and her nephew who were left unattended in a vehicle in the park. (Tr. 14-15). She showed the officer a photograph on her phone of a boat launch area where she believed the children were. (Tr. 14-15). Officer Hunter was able to discern that the photograph was likely taken at the East Newport boat launch. (Tr. 15). The officer then had Ivory and her mother, who was in the car with her, follow him to the boat launch. (Tr. 15-16). He also contacted his supervisor, Sergeant Robert Vukovich to inform him of the situation. (Tr. 16).

{¶16}   When he arrived, Officer Hunter found an SUV with "some very distraught juveniles" in it. (Tr. 17). The two juvenile boys were six and ten years old. (Tr. 18). The Officer said the two boys were crying and were "very happy" to see him. (Tr. 18). Officer Hunter stated that the older boy hugged him and both boys looked relieved. (Tr. 18).

{¶17}   Officer Hunter noted that the boys did have snacks and water with them. (Tr. 22). After talking to the children, the officer learned that the six-year old's mother (appellant) was out on a kayak trip. (Tr. 25). He then had another officer locate the kayak group to have them return to the boat launch area. (Tr. 26). The group returned approximately 30 minutes later. (Tr. 28). The officer stated that there was no one with

the children when he found them and he did not see anyone else in the parking lot when he arrived. (Tr. 35, 45).

**{¶18}** Officer Hunter next described the area where the children were left. He stated that it was a large paved parking lot with a slight grade toward the lake. (Tr. 29). He stated that the SUV was parked approximately 60 feet from the water. (Tr. 29).

**{¶19}** Sergeant Vukovich testified next. The sergeant stated that he heard the call on his radio that there were unattended children in the park and Officer Hunter was searching for them. (Tr. 50). He responded to the East Newport boat launch where he found Officer Hunter and the children and the woman who had been looking for them. (Tr. 50-51).

**{¶20}** Sergeant Vukovich noted that the lake is large and there were no boats on the water in view of the parking lot. (Tr. 53-54). When appellant arrived back at the parking lot, he asked her what was going on. (Tr. 56). Appellant told the sergeant she had left the children in the car because they were not old enough to go on the kayak trip. (Tr. 56). Appellant's two older children went on the kayak trip. (Tr. 57-58). Appellant indicated to Sergeant Vukovich that she had lied about the ages of the older two children so that they could go on the trip. (Tr. 58). He believed the kayak trip was two hours long. (Tr. 58). It started at 4:30 p.m. and the group came back sometime after 6:00 p.m. (Tr. 59).

**{¶21}** Sergeant Vukovich testified that he was concerned as to why appellant had left the children in the car. (Tr. 59). He was further concerned that she had also left the keys in the car. (Tr. 59). And the sergeant was troubled because the area where appellant left the children is known to have many cases involving sexual misconduct. (Tr. 63). Additionally, he was worried about the SUV's close proximity to the water as the children could have wandered off and fell in or accidentally put the vehicle in gear and it could have rolled into the water. (Tr. 64).

**{¶22}** The sergeant testified that appellant never told her that someone was watching the children. (Tr. 61-62). In fact, he made a note in his report that no one was in sight of the children. (Tr. 67).

**{¶23}** Ivory, appellant's sister, testified next. She stated that on the day in question, she called appellant because she was supposed to meet her. (Tr. 79). Instead

of appellant answering the call however, Ivory's ten-year-old son answered. (Tr. 79). Ivory's son told her that appellant had gone boating and he was in the car. (Tr. 80). Her son sent her a picture of the area where he was. (Tr. 80). She stated that she then spoke on the phone to a man who was near the children who tried to give her directions to reach them. (Tr. 81). Ivory said that she asked the man to stay with the children until she could get there and he agreed. (Tr. 82).

{¶24} Ivory drove to Mill Creek Park. (Tr. 81). She located Officer Hunter and explained the situation to him and showed him the picture her son had sent her. (Tr. 82). The officer told Ivory he would take her to the area where her son was. (Tr. 84). She followed him to the Newport boat area. (Tr. 84-85). Ivory testified that the unnamed man whom she had spoken with on the phone was still there and she thanked him. (Tr. 87). She also stated that Officer Hunter asked him his name and then the man jogged away. (Tr. 87). Ivory also indicated there was a lady in another car that was parked in the parking lot. (Tr. 98-99).

{¶25} Upon arriving, Ivory stated that she took the children out of the car. (Tr. 86). She testified that her nephew was crying but that the children were both fine. (Tr. 102). She stated that Officer Hunter was interacting with them and trying to form a bond. (Tr. 86).

{¶26} Ivory also stated that appellant later told her that the lady in the parked car was watching the children while her husband was on the boat trip. (Tr. 100). And Ivory testified that she told the officers that she did not want to press charges against her sister. (Tr. 106).

{¶27} Appellant testified in her own defense. She stated that on the day in question she called and made reservations for the kayak trip at Mill Creek Park. (Tr. 130). She bought six tickets. (Tr. 131). Appellant brought her three children, ages 16, 14, and 6. (Tr. 131). Her brother also went with her. (Tr. 131). Additionally, appellant had her nephew with her who was 10. When she arrived for the trip, appellant was told that the children had to be 17 or older to participate. (Tr. 132). Appellant then decided to lie and say that her older two children were 17 and 18 so that they could go. (Tr. 132).

{¶28} Appellant testified that she asked a woman who was there with her husband if she would watch the two younger children while she went on the kayak trip

and the woman agreed. (Tr. 133). Appellant then put the two younger children in her vehicle with a cell phone, chips, water, and Gatorade. (Tr. 133-134). She told them not to get out. (Tr. 134). Appellant stated that she put the keys in a magnetic box that she clipped somewhere in the vicinity of the driver's side door. (Tr. 137).

{¶29} When appellant returned from the trip, she stated that the police were waiting and took her to their cruiser. (Tr. 139). Appellant testified that they asked her why the children were not with her and she told the officers that the children were not old enough to go on the kayak trip. (Tr. 140). She did not mention to the officers that a woman was watching the children. (Tr. 140).

{¶30} On cross-examination, appellant admitted that she never told any of the officers that there was woman in the parking lot watching the children. (Tr. 146). And she admitted that she did not remember the woman's name. (Tr. 156).

{¶31} Based on this evidence, we cannot conclude that appellant's conviction is against the manifest weight of the evidence.

{¶32} Appellant argues that there were conflicts in the testimony. Specifically, she testified that there was a woman there watching the children. And Ivory testified that there was a man in the parking lot also keeping watch of the children. Yet the officers testified that no one else was in the parking lot when they arrived. And neither appellant nor Ivory could provide the names of these people they alleged were in the parking lot.

{¶33} Whether to believe appellant and her sister or to believe the officers as to if anyone else was in the parking lot with the children was a matter of credibility for the trial court to determine. Although an appellate court is permitted to independently weigh the credibility of the witnesses when determining whether a conviction is against the manifest weight of the evidence, we must give deference to the fact finder's determination of witnesses' credibility. *State v. Jackson*, 7th Dist. Jefferson No. 09-JE-13, 2009-Ohio-6407, at ¶ 18. The policy underlying this presumption is that the trier of fact is in the best position to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the proffered testimony. *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984).

{¶34} Appellant also argues that the children were not in danger. But Sergeant Vukovich testified as to numerous dangers the children could have encountered given that the keys were left in the vehicle, the vehicle was parked in close proximity to the lake, and the area where appellant left the children is known to have many cases involving sexual misconduct. Thus, the sergeant's testimony demonstrated that the children, who were alone in the vehicle, were potentially in danger.

{¶35} Based on the all of the evidence presented, the trial court could reasonably conclude from substantial evidence that the state proved the offense of endangering children beyond a reasonable doubt.

{¶36} Accordingly, appellant's sole assignment of error is without merit and is overruled.

{¶37} For the reasons stated above, the trial court's judgment is hereby affirmed.

Robb, J., concurs.
D'Apolito, J., concurs.

Case No. 20 MA 0125

———————————

For the reasons stated in the Opinion rendered herein, the sole assignment of error is overruled and it is the final judgment and order of this Court that the judgment of the Youngstown Municipal Court of Mahoning County, Ohio, is affirmed. Costs to be waived.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**